United States Court of Appeals,

Fifth Circuit.

No. 92-9551.

Durwood WILSON, et al., Plaintiffs-Appellees,

v.

VALLEY ELECTRIC MEMBERSHIP CORP., et al., Defendants-Appellants.

Cajun Electric Power Cooperative, Inc., Movant-Appellant.

Dec. 8, 1993.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before SNEED[*], REYNALDO G. GARZA, and JOLLY, Circuit Judges.

SNEED, Circuit Judge:

Customers of rural electric cooperatives sued to obtain refunds of rate increases that allegedly violated the Louisiana Constitution. The district court abstained in favor of contemporaneous proceedings in the Louisiana Public Service Commission. We affirm.

I.

*FACTS*

Appellants are rural cooperatives distributing electric power to customers in Louisiana. Traditionally, such cooperatives were not subject to the authority of the Louisiana Public Service Commission (the Commission), which regulates public utilities in the state. A 1970 statute, however, included cooperatives within the definition of "public utility." Together with the 1974 state constitution, which gave the Commission broad powers over utilities, this statute gave the Commission jurisdiction over rural cooperatives.

After a brief period of Commission regulation, a 1978 statute again exempted cooperatives' rates from the Commission's purview. However, the Louisiana Supreme Court subsequently held that the statutory exemption violated the state constitution. *Cajun Elec. Power Coop., Inc. v. Louisiana Pub. Serv. Comm'n,* 544 So.2d 362 (La.), *cert. denied,* 493 U.S. 991, 110 S.Ct. 538, 107 L.Ed.2d

---

[*]Senior Circuit Judge of the Ninth Circuit, sitting by designation.

536 (1989).

Following the *Cajun Electric* decision, customers of two rural cooperatives filed a class action in state court on behalf of all cooperative members, seeking refunds for rate increases entered without Commission approval pursuant to the now-unconstitutional exemption. As one of the cooperatives was then entering Chapter 11 reorganization, the cooperatives removed the case to federal district court.

The cooperatives moved for summary judgment, arguing that *Cajun Electric* should only apply prospectively, or alternatively that the rate increases, promulgated in good faith reliance on the statutory exemption, should be upheld. Shortly thereafter, the Commission initiated a review of rates charged by one cooperative during the exemption period. The district court granted the plaintiff members' motion to abstain in favor of the contemporaneous Commission proceedings, relying on the Supreme Court's decision in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The cooperatives appeal.

## II.

### *JURISDICTION AND STANDARD OF REVIEW*

The district court had jurisdiction pursuant to 28 U.S.C. § 1334(a)-(b) (1988). This court has appellate jurisdiction under 28 U.S.C. § 1291.[1]

We review a district court's decision to abstain for abuse of discretion. *See American Bank & Trust Co. v. Dent,* 982 F.2d 917, 922 n. 6 (5th Cir.1993) (citing *Allen v. Louisiana State Bd. of Dentistry,* 948 F.2d 946, 949 (5th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 1764, 118 L.Ed.2d 426 (1992)). However, the allowable discretion is quite narrow, because it "must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved." *Id.* (citing *C-Y Dev. Co. v. City of Redlands,* 703 F.2d 375, 377 (9th Cir.1983)).

## III.

---

[1]A district court's decision to abstain is considered "final" for purposes of appellate review. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 8-13, 103 S.Ct. 927, 932-36, 74 L.Ed.2d 765 (1983); *Barnhardt Marine Ins., Inc. v. New England Int'l Sur. of America, Inc.,* 961 F.2d 529, 531 (5th Cir.1992).

*DISCUSSION*

We start with the command that the federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). As a result, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 813, 96 S.Ct. at 1244. Nevertheless, the Supreme Court has enunciated several abstention doctrines, including that of *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

In *Burford,* an oil company challenged a drilling permit issued by the Texas Railroad Commission, arguing that the order violated state law and the federal Due Process Clause. *Id.* at 316-17, 63 S.Ct. at 1098-99. Jurisdiction was based on diversity of citizenship as well as on the constitutional question. *Id.* at 317, 63 S.Ct. at 1099. The Supreme Court noted the complexity and importance of oil field regulation, and observed that Texas law gave the Railroad Commission "broad discretion" in that area, with a special procedure for centralized judicial review by the state court system. *Id.* at 318-27, 63 S.Ct. at 1099-1104. Expressing concern that federal intervention would result in needless confusion and conflict with the state system, the Court held that "a sound respect for the independence of state action requires the federal equity court to stay its hand." *Id.* at 327-34, 63 S.Ct. at 1104-08.

*Burford* abstention is proper "[w]here timely and adequate state-court review is available,"[2] and "where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) (*NOPSI* ) (quoting *Colorado River,* 424 U.S. at 817,

---

[2]The cooperatives express concern that one member of the Louisiana Commission may be biased against them. However, they do not challenge the adequacy of Louisiana's system of judicial review of Commission orders, arguing instead that this factor is at best a neutral one. Accordingly, we focus our attention only on the disruptive effect of federal review. *See Alabama Pub. Serv. Comm'n v. Southern Ry. Co.,* 341 U.S. 341, 349, 71 S.Ct. 762, 768, 95 L.Ed. 1002 (1951) (finding abstention proper where "[a]ppellee has not shown that the [state] procedure for review of Commission orders is in any way inadequate to preserve for ultimate review in this Court any federal questions arising out of such orders").

96 S.Ct. at 1246). The *Burford* line of cases reveals several factors that are relevant in making this determination: (1) whether the cause of action arises under federal or state law, *see NOPSI,* 491 U.S. at 361-62, 109 S.Ct. at 2514-15 (finding abstention inappropriate where the case "d[id] not involve a state-law claim");[3] (2) whether the case requires inquiry into unsettled issues of state law, *see Burford,* 319 U.S. at 331, 63 S.Ct. at 1106 (listing difficult issues present in petitioner's case), or into local facts, *see Alabama Pub. Serv. Comm'n v. Southern Ry. Co.,* 341 U.S. 341, 347-48, 71 S.Ct. 762, 767-68, 95 L.Ed. 1002 (1951); (3) the importance of the state interest involved, *see Burford,* 319 U.S. at 324, 63 S.Ct. at 1102 (citing state interest in oil regulation); (4) the state's need for a coherent policy in that area, *see id.* at 324, 327, 63 S.Ct. at 1102, 1104 (describing complexity, volume, and interdependence of oil cases); and (5) the presence of a special state forum for judicial review, *see id.* at 320, 325-27, 63 S.Ct. at 1100, 1103-04 (observing that regulatory commission had primary jurisdiction, with a special system of centralized judicial review).[4]

Multiple factor tests are difficult to apply and are particularly difficult in this case because of the narrowness of our discretion. Despite this difficulty, we hold the *Burford* doctrine supports the trial court's decision.

A. *Federal or State Basis of Claim*

There are only state law issues in this case. These are, first, whether the Louisiana Supreme Court's decision in *Cajun Electric* should apply retroactively, and, second, if so, whether it invalidates prior rate increases. The Supreme Court has declared: "When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions."

---

[3]Although *Burford* itself involved federal and state law claims, the federal constitutional issue was not substantial. *NOPSI,* 491 U.S. at 360, 109 S.Ct. at 2513.

[4]The Seventh Circuit has adopted a four-factor *Burford* test, considering (1) whether the cause of action is exclusively federal, (2) whether difficult or unusual state laws are at issue, (3) the need for coherent state doctrine, and (4) whether state procedures indicate a desire to create a special forum to adjudicate the issues involved. *See General Ry. Signal Co. v. Corcoran,* 921 F.2d 700, 708-09 (7th Cir.1991). The Tenth Circuit has a similar formulation, rephrasing item (2) as "whether the suit requires the court to determine issues ... directly relevant to ... state policy." *Grimes v. Crown Life Ins. Co.,* 857 F.2d 699, 704 (10th Cir.1988), *cert. denied,* 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 934 (1989). The district court in this case employed the Seventh Circuit test. We do not express any opinion as to either test.

*American Trucking Ass'ns v. Smith,* 496 U.S. 167, 177, 110 S.Ct. 2323, 2330, 110 L.Ed.2d 148 (1990) (plurality opinion) (citing *Great N. Ry. v. Sunburst Oil & Ref. Co.,* 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932)).

B. *Inquiry into Unsettled Law or Local Facts*

Resolving the issue of retroactivity also would require delving into highly local issues of fact. To be sure, Louisiana law appears reasonably settled in this area. In *Lovell v. Lovell,* 378 So.2d 418 (La.1979), the Louisiana Supreme Court adopted the test of *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), for determining whether its decisions should apply retroactively. This test considers (1) whether the decision to be applied establishes a new principle of law, (2) whether retrospective application will further or retard the rule established, and (3) the inequity imposed by retroactivity. *See Lovell,* 378 So.2d at 421-22.

To apply the *Lovell* test, at the very least, we would need to assess the inequity of retrospective application. This in turn would require that we compare the rates charged by the cooperatives during the exemption period against the rates that would have resulted from Commission jurisdiction, and that we weigh the customers' interests against those of the cooperatives. This is precisely the sort of highly localized, specialized, judgmental, and perhaps partisan analysis that brings this case squarely within the Supreme Court's decision to abstain in *Alabama Public Service Comm'n v. Southern Railway Co.,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951).

In *Alabama Public Service Comm'n,* a railroad challenged a state commission order that denied it permission to discontinue certain routes. *Id.* at 342-43, 71 S.Ct. at 764-65. The relevant legal test was apparently settled, and required "balancing the loss to the railroad from continued operation of [the affected routes] with the public need for that service." *Id.* at 347-48, 71 S.Ct. at 767-68. While the legal framework was clear, the Supreme Court still held abstention proper to avoid "the essentially local problem." *Id.* at 347, 349-50, 71 S.Ct. at 767, 768-69; *see also Allstate Ins. Co. v. Sabbagh,* 603 F.2d 228, 231 n. 2: "[W]e see no reason or policy which would exclude as a "difficult question of state law' a question, requiring the most sophisticated analysis of complex facts, whether a rate meets a legal standard."

As in *Alabama Public Service Comm'n,* applying the seemingly clear legal standard for retroactivity would involve the federal court in an open-ended "fairness" inquiry into predominantly local matters. By proceeding, the district court would have risked reaching a different answer than the Louisiana institutions with greater interest in and familiarity with such matters.

C. *Importance of State Interest*

The third *Burford* factor, the importance of the state interest at stake, obviously weighs in favor of abstention. The Supreme Court has recognized that utility regulation "is one of the most important of the functions traditionally associated with the police power of the States." *NOPSI,* 491 U.S. at 365, 109 S.Ct. at 2516. On the other hand, the federal courts have little interest in hearing this case. The cooperatives do not argue that this suit will interfere with the reorganization that catapulted it into the federal system. Nor does the Bankruptcy Code represent a supervening federal interest; to the contrary, "[n]othing ... prevents a district court ... in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding ... arising in or related to a case under title 11" of the Code. 28 U.S.C. § 1334(c)(1).

D. *The State's Need for Coherent Policy*

Louisiana has a need for coherent policy in this area. *Burford* abstention is intended to avoid recurring and confusing federal intervention in an ongoing state scheme. *See Burford,* 319 U.S. at 332, 63 S.Ct. at 1106 (quotation omitted): "[W]e should leave these problems of Texas law to the state court where each may be handled as one more item in a continuous series of adjustments." While the dispute here appears to be more of a one-time affair arising from a single landmark Louisiana decision, the history of rural cooperatives in the state reveals a long-running seesaw battle between nonregulation and regulation. The *Cajun Electric* decision is merely the latest salvo. Federal intervention this late in the day would be inappropriate.

Further, the Louisiana Supreme Court has already hinted that it would apply *Cajun Electric* retroactively. In a previous case, that Court noted in dicta that Commission jurisdiction "was not interrupted" by the statutory exemption. *See Dixie Elec. Membership Coop. v. Louisiana Pub. Serv. Comm'n,* 509 So.2d 1002, 1007 (La.1987). It would be unseemly for this court to join the chorus

when a state court may have already spoken. That court needs neither our harmonious nor disharmonious notes. Finally, while the issue in this case might appear unique, the underlying customer refund suit is a more common dispute and may recur.

E. *Presence of Special State Forum*

Consistent with its need for coherent regulatory policy, Louisiana has established a special forum for rate cases. Primary jurisdiction for such cases rests in the Commission, which has broad power to address legal issues related to its regulatory duties. *See Daily Advertiser v. Trans-La,* 612 So.2d 7, 16-18 (La.1993) (describing Commission's jurisdiction as "plenary"). As in *Burford,* the Commission is vested with broad discretion. *See Dixie Elec. Membership Coop.,* 509 So.2d at 1007. The Louisiana Constitution centralizes appeals in the state district court in the state capital and provides for expedited review with a right of direct appeal to the state supreme court. La. Const. art. IV, § 21(A), (E); *see also* La.Rev.Stat.Ann. 45:1192 (West Supp.1993). This procedure is similar to the centralized system of review in *Burford.*

Louisiana's courts have zealously guarded this constitutional framework. A recent state supreme court decision observed that "a line of Louisiana cases has uniformly rejected semantic endeavors by parties to circumvent the [Commission's] exclusive jurisdiction over rate matters." *Daily Advertiser,* 612 So.2d at 27 (collecting cases).

In *Daily Advertiser,* customers of a regulated gas distributor argued that the distributor and its supplier illegally inflated their costs and thereby overcharged customers. *Id.* at 11-14. The plaintiffs sued for fraud and violations of state antitrust laws. *Id.* at 13. Finding that the case involved assessing the reasonableness of Commission-authorized rates, and that the plaintiffs essentially demanded a refund for overcharges, the court dismissed a portion of the suit and stayed the remainder in favor of a contemporaneous Commission investigation. *Id.* at 26-32.

As in *Daily Advertiser,* the plaintiffs in this case are in essence arguing that they paid too much for the cooperatives' services and are seeking a refund. Resolving this issue requires assessing the reasonableness of the cooperatives' rates. Neither semantic endeavors to describe the case otherwise, nor the fortuity of a basis for federal jurisdiction, should allow the parties to circumvent

the Commission's exclusive jurisdiction. *See Construction Aggregates Corp. v. Rivera de Vicenty,* 573 F.2d 86, 96 (1st Cir.1978) (abstaining from customer's challenge to insurance rates, where Puerto Rican law provided centralized review of Insurance Fund orders with direct review by Puerto Rican Supreme Court).

The cooperatives paint this case as a purely abstract legal exercise in retroactive application. But we cannot divorce the legal question from the suit for rate refunds from which it came, nor from the inquiry into local interests to which it must lead. The district court did not abuse its discretion in abstaining from jurisdiction.

AFFIRMED.