REAVLEY, Circuit Judge:
This appeal is taken from a preliminary injunction entered by the district court to regulate the withdrawal of water from the Edwards Aquifer, a large underground reservoir supplying water to central Texas. Because we hold that the Sierra Club did not establish a substantial likelihood of success on the merits, in light of the abstention doctrine enunciated in Burford v. Sun Oil Co.,[1] we vacate the injunction.
BACKGROUND
The City of San Antonio relies exclusively on the Edwards Aquifer for its water. Other parts of central Texas also rely on the aquifer as a primary source of water. It supplies over one million people with water in San Antonio alone.
The aquifer discharges water into the Guadalupe River Basin at the San Marcos and Comal Springs. According to the Sierra Club the annual recharge of the aquifer for several years has been exceeded by the annual discharge (withdrawals plus springflow), causing the aquifer level to fall each year. It claims that a continuation of the status quo inevitably will either lead to the complete drying up of the springs or render them intermittent.
In the area of the San Marcos and Comal Springs, the aquifer is home to five plant and animal species designated as endangered or threatened under the Endangered Species Act.[2] Of the five, one — the fountain darter— is found at Comal Springs. The fountain darter is an endangered species.
In 1996 the aquifer suffered a severe drought. The spring flow at Comal Springs fell from April through June and then leveled off. In June of 1996, the Sierra Club’s expert zoologist observed five or six “very thin” fountain darters in the uppermost spring run of Comal Springs. The Sierra Club claims that it presented direct evidence of fountain darter deaths, injuries in the form of emaciation, and a scarcity of young fountain darters due to the low spring flows, and that there is a causal link between the low spring flows and defendants’ pumping of water from the aquifer. San Antonio’s hydrology expert stated that he did not anticipate further declines in the water levels after August 1, *792 1996, and that the water level would rise in the fall.
In a prior suit, Sierra Club v. Babbitt,[3] filed in 1991 in the same district court, the Sierra Club sued the Secretary of the Interi- or and the United States Fish and Wildlife Service under the Endangered Species Act. The suit claimed that the Fish and Wildlife Service had failed to adopt an “adequate recovery plan” under that Act. This suit lasted five years, and included several appeals to the Fifth Circuit. In one appeal our court recognized abstention concerns, and particularly Burford abstention, as sometimes calling for federal court abstention “to allow the state’s comprehensive regulatory scheme to operate without the risk of competing attempts between that regulator and the federal courts to exercise control over the same entity.”[4] On remand, the district court declined to abstain, because at the time the Edwards Aquifer Act[5] (described below) had been declared unconstitutional. The court reasoned that there was no competing state regulatory system in place that would make abstention appropriate under Burford. In 1996 this court ordered the Babbitt suit dismissed as moot after the Fish and Wildlife Service published a revised recovery plan.
The Sierra Club brought the pending suit in June of 1996 under the Endangered Species Act. The complaint, seeking certification of a defendant class, alleges that defendants are “taking” endangered species in violation of the Endangered Species Act.[6] The complaint seeks to enjoin defendants “to reduce withdrawals from the Edwards by such levels as are necessary to maintain minimum natural springflows from the Comal and San Marcos Springs for the conservation and survival of the endangered and threatened species living at and downstream from those springs.” The named defendants include San Antonio and numerous other governmental and private entities.
In 1993 the Texas Legislature enacted the Edwards Aquifer Act, creating a regulatory scheme to control and manage the use of the aquifer. An administrative body, the Edwards Aquifer Authority, was created to oversee this regulatory scheme. A state district court ruled the Act unconstitutional, but in 1996 the Texas Supreme Court unanimously upheld the facial constitutionality of the Act. Barshop v. Medina County Underground Water Conservation Dist., 925 5.W.2d 618 (Tex.1996). The federal district court, in the Babbitt case, recognized that if the Texas Supreme Court were to uphold the constitutionality of the Edwards Aquifer Act, “this Court would do everything in its power to allow the [Authority] to function and nothing that would frustrate the [Authority].”
Shortly after the present suit was filed the Texas Supreme Court ruled in the Barshop case. San Antonio and other defendants moved to dismiss the suit on Burford abstention grounds. The Sierra Club moved for a preliminary injunction. After a one-day evidentiary hearing, the court denied the motion to dismiss and entered the preliminary injunction now on appeal.[7] The court concluded that “an emergency presently exists and takes of endangered species are occurring,” and that “[w]ithout a fundamental change in the value the region places on fresh water, a major effort to conserve and reuse Aquifer water, and implemented plans to import supplemental supplies of water, the region’s quality of life and economic future is imperiled.” The court incorporated by reference a “1996 Emergency Withdrawal Reduction Plan,” which provides for comprehensive regulation of pumping from the aquifer.
In its order granting the injunction the court did not immediately impose the Emergency Withdrawal Reduction Plan, but did order limitations on pumping based on spring flows, the effect of which was that the municipal defendants were limited to water use of 1.2 times their winter usage. The court *793 found that the Edwards Aquifer Authority “has a great learning curve to overcome before it is ready to manage the Aquifer.” It ordered that the injunction remain in effect until the defendants can demonstrate that a critical management plan by the Edwards Aquifer Authority that will preserve endangered species is operative. It also ordered the parties to supply the court and a special master with monthly water usage information and all other information “necessary to keep the Court informed as to compliance with this Order.”
DISCUSSION
The party seeking a preliminary injunction must establish: (1) a substantial likelihood of success on the merits, (2) a substantial threat that failure to grant the injunction will result in irreparable injury, (3) that the threatened injury outweighs any damage that the injunction will cause the opposing party, and (4) that the injunction will not disserve the public interest.[8] The decision to grant or deny a preliminary injunction is reviewed for abuse of discretion.[9] Likewise, we generally review abstention decisions under an abuse of discretion standard.[10]
The Sierra Club contends that the district court’s decision not to abstain under Burford is not properly before us on appeal, but we find no merit to this argument.[11] The issue before us is not the ultimate question of whether the district court should abstain, but whether the court properly entered a preliminary injunction. The latter question turns on whether the Sierra Club established a substantial likelihood of success on the merits in the face of the Burford abstention doctrine.
The Sierra Club failed to meet the first requirement of a preliminary injunction — a substantial likelihood of success on the merits — because abstention appears so manifestly warranted under Burford. In Burford, plaintiff Sun Oil brought a federal suit challenging a Texas Railroad Commission order granting a drilling permit to defendant Burford. Sun Oil claimed the permit violated its due process rights. The Court held that the federal district court should have abstained, noting the comprehensive nature of the state regulatory scheme, the large interest of the state in regulating and conserving its oil and gas resources, and the need for a unified approach to granting permits by a single adjudicatory body.
Factually, Burford and our case are very similar. In Burford, the Court emphasized the elaborate and comprehensive nature of the state regulatory scheme in issue. It described the Railroad Commission order under consideration as “part of the general regulatory system devised for the conservation of oil and gas in Texas,” noted that the Commission “carries out its functions of production control or proration by an elaborate system of orders, schedules, and reports,” and that the state regulatory scheme provid *794 ed a “well organized system of regulation and review.”[12]
Similarly, the Edwards Aquifer Act can fairly be characterized as a comprehensive regulatory scheme. It represents a sweeping effort by the Texas Legislature to regulate the aquifer, with due regard for all competing demands for the aquifer’s water. The Act vests the Edwards Aquifer Authority with “all the powers and privileges necessary to manage, conserve, preserve, and protect the aquifer____” The Authority controls withdrawals from the aquifer through a permit system. Section 1.25 of the Act charges the Edwards Aquifer Authority with developing “a comprehensive water management plan that includes conservation, future supply, and demand management plans.” The Act also specifically addresses the preservation of endangered species. Under § 1.14 of the Act the Authority must “protect aquatic and wildlife habitat” and “protect species that are designated as threatened or endangered under applicable federal or state law.” The Authority is empowered to file civil suits in state district court for an injunction. In addition, a separate entity, the Texas Natural Resource Conservation Commission, is authorized under § 1.39- of the Act to file suit for an order of mandamus against the Authority to compel the Authority to perform its duties.
Burford emphasized that the state regulatory scheme in issue concerned the “very large” interest of the state in conserving oil and gas, and that the Railroad Commission’s regulation of oil and gas production was “of vital interest to the general public ... with implications to the whole economy of the state.”[13] The regulation of water resources is likewise a matter of great state concern. As the Texas Supreme Court stated in Bar-shop, “[conservation of water has always been a paramount concern in Texas, especially in times, like today, of devastating drought.”[14] It characterized the Edwards Aquifer as “the primary source of water for residents of the south central part of this state. It is vital to the general economy and welfare of the State of Texas.”[15] The court recognized that “the State has the responsibility under the Texas Constitution to preserve and conserve water resources for the benefit of all Texans.”[16] The Texas Legislature, speaking through § 1.01 of the Edwards Aquifer Act, found that the aquifer “is a unique and complex hydrological system, with diverse economic and social interests dependent on the aquifer for water supply.”
The defendants correctly note that both the aquifer and the endangered species are entirely intrastate, which makes management of the aquifer a matter of peculiar importance to the state.[17]
The record in this case also illustrates the vital importance of the aquifer to the citizens of central Texas. For example, the president of the San Antonio Water System testified that the injunction’s limitation of water use to 1.2 times average winter use would likely require the city to maintain lower water pressure than state law requires for fighting fires. A consulting engineer for the City of Leon Valley testified that the restrictions would necessitate the complete curtailment of outside watering, resulting in damage to 50% of the foundations in the city with damages to each home ranging from $2000 to $20,000. Other defendants offered similar evidence through affidavits.
As in Burford, there is a need for unified management and decision-making regarding the aquifer, since allowing one party to take water necessarily affects other parties. The Court in Burford noted that for many rea *795 sons “each oil and gas field must be regulated as a unit,” that well spacing and proration “are a part of a single integrated system and must be considered together,” and that “[t]he state provides a unified method for the formation of policy and determination of cases by the Commission and by the state courts.”[18] The Court stressed the need for unitary enforcement of the regulatory scheme by noting the problem of drainage: “Since the oil moves through the entire field, one operator can not only draw oil from under his own surface area, but can also, if he is advantageously located, drain oil from the most distant parts of the reservoir. The practice of attempting to drain oil from under the surface holdings of others leads to offset wells and other wasteful practices; and this problem is increased by the fact that the surface rights are split up into many small tracts.”[19] The Court noted that “the physical facts are such that an additional permit may affect pressure on a well miles away. The standards applied by the Commission in a given case necessarily affect the entire state conservation system.”[20]
Similar concerns surely affect regulation of an aquifer. As our court stated in the Babbitt appeal:
[t]he Edwards aquifer contains a finite amount of water, and as such, the need for uniform regulation is paramount. The Supreme Court has recognized that such circumstances sometimes require the federal courts to abstain to allow the state’s comprehensive regulatory scheme to operate without the risk of competing attempts between that regulator and the federal courts to exercise control over the same entity.[21]
The opinion goes on to state that “[a]s with the oil fields at issue in [Burford ], in the present case, Texas clearly has an interest in uniform decision-making regarding this finite amount of water.”[22]
The Sierra Club argues that abstention is not warranted because it only seeks relief under a federal law, the Endangered Species Act. The district court noted in the Babbitt case that “Burford abstention normally arises in a case in which a federal court has diversity jurisdiction over exclusively state law issues.” Our court has stated that one factor is deciding whether Burford abstention should apply is whether the cause of action arises under federal or state law.[23]
However, Burford itself states that abstention is appropriate whether jurisdiction is premised on diversity jurisdiction or otherwise, if the federal courts should, consistent with our federal system, afford comity to state governments in carrying out their domestic policy. The Court held: “Although a federal equity court does have jurisdiction of a particular proceeding, it may, in its sound discretion, whether its jurisdiction is invoked on the ground of diversity of citizenship or otherwise, ‘refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest’; for it ‘is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy.’”[24] Burford abstention does not so much turn on whether the plaintiffs cause of action is alleged under federal or state law, as it does on whether the plaintiff’s claim may be “in any way entangled in a skein of state law that must be untangled before the federal case can proceed.”[25] Moreover, our case is not distin *796 guishable from Burford because the cause of action is based on federal law. In Burford as well, the cause of action alleged was that the order of the Railroad Commission had denied plaintiffs “due process of law.”[26] If abstention is warranted when the plaintiff is claiming a violation of his constitutional rights, then surely it is also warranted where the plaintiff claims a federal statutory violation.
The district court reasoned that abstention was unwarranted because the Edwards Aquifer Authority had not had time to develop a plan for managing the aquifer and dealing with the emergency situation. The record indicates that the Authority is in the process of taking comments and formulating rules for permits and emergency measures. The State informs us in an amicus brief that the Edwards Aquifer Authority “is now established and has begun operations.” In a supplemental filing San Antonio points out that on December 19, 1996, the Authority issued final rules for filing and processing of permit applications, and for critical period management.
We do not believe that Burford abstention is applicable only where the state regulatory scheme is fully in place. The Supreme Court has noted that “[w]e have since provided more generalized descriptions of the Burford doctrine, see, e.g. ... Colorado River (abstention where ‘exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern’)”.[27]
The only significant factual distinction between our case and Burford — that the Railroad Commission’s regulatory scheme in Burford was well established — is not a sound basis for concluding that abstention is not warranted here. The reasoning of Burford did not turn on the fact that the regulatory scheme was old, but that it was a comprehensive scheme governing a matter of vital state interest, and one where uniform application of rules was important. These same concerns apply to our case.
In its brief the Sierra Club defends the injunction by arguing that it was entered only after the court “was informed that the [Edwards Aquifer Authority], on the night before the preliminary injunction hearing, had voted against declaring an emergency____” In denying the motion to dismiss on abstention grounds, the district court noted that “the Edwards Aquifer Authority voted at its July 31,1996 hearing that an emergency did not exist and thus no emergency measures needed to be taken.... This Court, based on the documentary and testimonial evidence heard to date, believes than an emergency does exist.” What the court’s action indicates is that it is willing to abstain as long as the state authority agrees with it. The purpose of Burford abstention is to discourage such federal court second-guessing of state regulatory matters. Burford abstention is particularly appropriate where “[b]y proceeding the district court would have risked reaching a different answer than the [state] institutions with greater interest in and familiarity with such matters.”[28]
The Sierra Club argues that the Edwards Aquifer Act does not provide any state court judicial review for a plaintiff such as itself. The Sierra Club may be correct, since, unlike the Endangered Species Act,[29] there is no express private citizen cause of action created in the Edwards Aquifer Act for entities such as environmental groups to seek judicial redress for statutory violations. The defendants argue that there is provision for state court review in the state Act, since § 1.11(h) of the Edwards Aquifer Act provides that the Authority is subject to the Texas Administrative Procedure Act.[30] It is unclear, however, *797 whether this provision gives a private cause of action or confers standing on an environmental group like the Sierra Club. But as explained above, the Edwards Aquifer Authority is charged with protecting endangered species and is authorized to file civil suits in state district court for injunctive relief, and a separate entity, the Texas Natural Resource Conservation Commission, is authorized to file suit for an order of mandamus against the Authority to compel it to perform its duties.
The Supreme Court has described Burford abstention as applicable “[wjhere timely and adequate state-court review is available.”[31] However, we find no authority that Burford abstention cannot apply unless the plaintiff himself has a private, judicial cause of action under the state regulatory scheme, and the Supreme Court has recently stated that there is no “formulaic test for determining when dismissal under Burford is appropriate.”[32]
Judge Benavides’ “dissent” — a dissent, not from the judgment, but from deciding the appeal — treats the Sierra Club as the possessor of a claim of right rather than one of standing. The true interest here is that of the public in the preservation of the fountain darter. The rationale of Burford abstention is served by the state’s regulation of this enormous water resource rather than by the federal court. At least, that appears to be true from this preliminary injunction record. We state no bar against the Sierra Club, either in pursuing the merits or in ultimate efforts to protect the water and darters if the State of Texas fails to do so.
The Sierra Club argues that abstention cannot be used to create “negative preemption,” meaning that a state cannot set up its own regulatory scheme and then claim that a federal regulatory scheme should be ignored. It cites Adams Fruit Co. v. Barrett,[33] In that case the plaintiffs, migrant farm workers, were injured and received state worker compensation benefits. They then sued under the federal Migrant and Seasonal Agricultural Worker Protection Act.[34] The Court held that the state law providing that a worker who receives worker’s compensation cannot recover any other benefits did not bar the plaintiffs from pursuing their federal remedy. It stated that “we refuse to adopt [defendant’s] ‘reverse’ pre-emption principle that would authorize States to withdraw federal remedies by establishing state remedies as exclusive.”[35] This case is not on point since it does not discuss abstention. The Sierra Club may be confusing preemption with abstention.
Regardless, we agree with the Sierra Club that, as a general proposition, a State should not be able to create a regulatory scheme and then claim that federal regulation of the same subject matter does not apply. In effect it argues the state Act has “preempted” federal review of its federal claim if the federal court abstains. The response to this argument, however, is that the same thing happens whenever a federal court abstains and the plaintiff has asserted a federal claim. This is almost always the case with Younger abstention,[36] where the plaintiff brings suit in federal court, seeking to enjoin a state proceeding on grounds that his federal constitutional rights are being violated.
Another weakness in the Sierra Club’s “negative preemption” argument is that the Endangered Species Act cannot fairly be described as an attempt to preempt all state law related to conservation and the protection of endangered species. The Act itself states: “It is further declared to be the policy of Congress that Federal Agencies shall cooperate with State and Local Agencies to resolve water issues in concert with *798 conservation of endangered species.”[37] The language of the federal Act does not suggest that abstention is to be avoided in cases brought under it.
The Sierra Club also argues that abstention should not apply because there is no state administrative proceeding underway with which the federal proceeding is in conflict. We find this argument factually and legally unavailing. Factually, the record indicates that the Edwards Aquifer Authority has proceeded with rulemaking for the granting of permits and critical period management, and has already declined to declare an emergency. The federal court’s injunction conflicts with these actions. Legally, Bur-ford abstention does not require the existence of an ongoing state proceeding with which the federal court action directly interferes. This requirement is found with Younger abstention, which applies “when federal court jurisdiction would interfere with pending criminal, civil, or administrative state proceedings,” and requires that “the pending state proceeding must be ongoing and judicial in nature.”[38]
For these reasons, we conclude that the district court erred in granting the preliminary injunction. The order granting the injunction is VACATED.

. 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

. 16 U.S.C. §§ 1531-44.

. No. Mo-91-CA-069 (W.D.Tex.).

. Sierra Club v. Babbitt, 81 F.3d 155 (5th Cir. 1995), at 6.

. Act of May 30, 1993, 73d Leg., R.S., ch. 626, 1993 Tex. Gen. Laws 2355, as amended by Act of May 29, 1995, 74th Leg., R.S., ch 261, 1995 Tex. Sess. Law Serv. 2505.

. See 16 U.S.C. § 1538(a)(1)(B).

. This court has stayed the injunction pending appellate review.

. Lakedreams v. Taylor, 932 F.2d 1103, 1107 (5th Cir.1991).

. Id.

. American Bank and Trust Co. of Opelousas v. Dent, 982 F.2d 917, 922 n. 6 (5th Cir.1993).

. The Sierra Club argues that an order denying abstention is not appealable under Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988), and that the defendants are attempting an "end run” around this rule by treating their abstention argument as an appeal of an order granting an injunction. There is no merit to this argument. Whether the court should have abstained goes directly to whether the plaintiff was likely to succeed on the merits. The defendants are entitled to raise this argument in this interlocutory appeal of the injunction, which is plainly allowed under 28 U.S.C. § 1292(a)(1). Gulfstream did not involve an injunction. It was an attempt to appeal the denial of a motion to stay or dismiss on abstention grounds. The Sierra Club also cites Doran v. Salem Inn, Inc., 422 U.S. 922, 930, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975), which states that "the issuance of a preliminary injunction is not subject to the restrictions of Younger." This case is inapposite because it was not discussing whether the refusal of a court to abstain is immediately appealable. The quoted passage was part of a discussion of whether Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), applies to a plaintiff who has not yet been subjected to state criminal proceedings, to which the Court’s answer was no. The case did not discuss Burford abstention, nor did it discuss appealability of an abstention ruling.

. 319 U.S. at 318, 320 n. 12, 327, 63 S.Ct. at 1099-1100, 1101 n. 12, 1104.

. Id. at 320, 324-25, 63 S.Ct. at 1100-01, 1102-03.

. 925 S.W.2d at 626.

. Id. at 623.

. Id.

. The defendants separately argue that applying the Endangered Species Act to these circumstances is beyond the power of Congress to regulate interstate commerce and therefore unconstitutional. The United States has urged that we not reach this issue unless, all other appellate challenges to the temporary injunction being first rejected, it becomes necessary to do so in order to resolve this appeal. We do not reach any constitutional issue.

. 319 U.S. at 319, 323 n. 15, 333-34, 63 S.Ct. at 1100, 1103 n. 15, 1107-08.

. Id. at 319, 63 S.Ct. at 1099-1100.

. Id. at 324, 63 S.Ct. at 1102-03.

. Opinion at 793 (citing Burford ).

. Id. at 793 n. 4.

. Wilson v. Valley Elec. Membership Corp., 8 F.3d 311, 314 (5th Cir.1993).

. 319 U.S. at 317-18, 63 S.Ct. at 1098-1100 (quoting United States ex rel. Greathouse v. Dern, 289 U.S. 352, 360, 53 S.Ct. 614, 617, 77 L.Ed. 1250 (1933) and Pennsylvania v. Williams, 294 U.S. 176, 185, 55 S.Ct. 380, 385, 79 L.Ed. 841 (1935)).

. Quackenbush v. Allstate Ins. Co., - U.S. -,-, 116 S.Ct. 1712, 1726, 135 L.Ed.2d 1 (1996) (quoting McMeese v. Board of Ed. for Community Unit Sch. Dist., 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963)).

. 319 U.S. at 317, 63 S.Ct. at 1098-99.

. Quackenbush, - U.S. at-, 116 S.Ct. at 1725 (emphasis added; quoting Colorado River Conservation Dist. v. United States, 424 U.S. 800, 814-16, 96 S.Ct. 1236, 1244-45, 47 L.Ed.2d 483 (1976)).

.Wilson, 8 F.3d 311 at 315.

. ’ See 16 U.S.C. § 1540(g).

. The Texas Administrative Procedure Act is now codified at Tex. Gov't Code Ann. § 2001.001 etseq. (Vernon Supp.1997).

. New Orleans Public Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 361, 109 S.Ct. 2506, 2514-15, 105 L.Ed.2d 298 (1989).

. Quackenbush, -U.S. at-, 116 S.Ct. at 1726.

. 494 U.S. 638, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990).

. 29U.S.C. § 1801 etseq.

. 494 U.S. at 648, 110 S.Ct. at 1390.

. See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

. 16 U.S.C. § 1531(c)(2).

. Baran v. Port of Beaumont Navigation Dist., 57 F.3d 436, 441 (5th Cir.1995).