IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-20027
_____

ABIDA A. BEGUM, individually and on
behalf of Mohammed Ikram; RAFAT BEGUM,

                                        Plaintiffs-Appellants
                                        Cross-Appellees,

versus

CORY MINER; SHERIE MINER,

                                        Defendants-Appellees
                                        Cross-Appellants.

_____

Appeal from the United States District Court for
the Southern District of Texas
(D.C. No. H-98-CV-2019)
_____
April 20, 2000

Before KING, Chief Judge, REAVLEY and STEWART, Circuit Judges.

REAVLEY, Circuit Judge:[*]

Appellants Abida Begum, individually and on behalf of Mohammed Ikram and

Rafat Begum (the Begums), appeal the district court's decision to abstain.  The court

stayed and administratively closed the case,[1] under the authority of Burford v. Sun Oil

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The Begums complain that while a motion to transfer venue or dismiss the case, on abstention and other grounds, was before the district court, there was no motion to stay filed below.  However, the motion did pray for "general relief," and in any event we have held that the district court may sua sponte stay a suit as a form of abstention.  See Murphy v. Uncle Ben's,

Co., 319 U.S. 315 (1943), and Ankenbrandt v. Richards, 504 U.S. 689 (1992). We affirm.

A.    Jurisdiction

Appellees Cory and Sherie Miner (the Miners) contend that we lack jurisdiction over this appeal. The decision to stay a case on grounds of Burford abstention is a final appealable order, and is also appealable under the collateral order doctrine. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712-14 (1996); Barnhardt Marine Ins., Inc. v. New England Int'l Sur. of Am., Inc., 961 F.2d 529, 531 (5th Cir. 1992).

The Miners also challenge the district court's subject matter jurisdiction. Even if, as the Miners argue, the district court lacked jurisdiction under the Alien Tort Statute, 28 U.S.C. § 1350, the court had diversity jurisdiction under 28 U.S.C. § 1332(a)(2), which grants jurisdiction over suits between "citizens of a State and citizens or subjects of a foreign state," and as discussed below, the "domestic relations exception" to diversity jurisdiction does not apply. The Begums are citizens of India[2] and the Miners are citizens of Texas.

B.    Abstention

We generally review abstention decisions under an abuse of discretion standard. See American Bank and Trust Co. of Opelousas v. Dent, 982 F.2d 917, 922 n.6 (5th Cir.

_____

Inc., 168 F.3d 734, 737 & n.1 (5th Cir. 1999).

[2] The complaint alleges, and the Miners do not dispute, that named plaintiffs Abida and Rafat Begum are citizens of India. While the style of the complaint indicates that it is brought "on behalf of" Mohammed Ikram, Abida's husband, Ikram is not thereafter named as a plaintiff. The record indicates that Mohammed Ikram is deceased and the complaint can be read as alleging that Abida Begum is suing on behalf of Ikram's estate. Whether or not Ikram's estate is a separate plaintiff, all indications are that Ikram lived and died in India, and that his estate and his legal representative, Abida Begum, are citizens of India. Hence, there is "complete diversity" between plaintiffs and defendants.

2

1993).  We have also stated that in reviewing the district court's exercise of discretion, we are careful "to ensure that the decision fits within the particular abstention doctrine involved."  Munich Am. Reinsurance Co. v. Crawford, 141 F.3d 585, 589 (5th Cir.), cert. denied, 525 U.S. 1016 (1998).

We cannot say that the district court abused its discretion in granting the abstention-based stay, though we note several factors weighing against and in favor of abstention in the pending circumstances.  At the outset, we note as a general proposition that a district court should abstain from a hearing a case with considerable reluctance, given the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."  Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).  "Abstention from the exercise of federal jurisdiction is the exception, not the rule."  Id. at 813.

Furthermore, this case does not square neatly with the factual underpinning of Burford itself, though that case does not lend itself to a simple analysis.  In Burford, plaintiff Sun Oil brought a federal suit challenging a Texas Railroad Commission order granting a drilling permit to defendant Burford.  Sun Oil claimed the permit violated its due process rights.  The Court held that the federal district court should have abstained, noting the comprehensive nature of the state regulatory scheme, 319 U.S. at 318, 320 n.12, 327, the large interest of the state in regulating and conserving its oil and gas resources, id. at 320, 324-25, and the need for a unified approach to granting permits by a single adjudicatory body.   This last factor, we think, is critical to an understanding of the Burford decision.

The Court recognized a need for unified management and decision-making, since allowing one party to take oil necessarily affects other parties.  It noted that for many

3

reasons "each oil and gas field must be regulated as a unit," that well spacing and proration "are a part of a single integrated system and must be considered together," and that "[t]he state provides a unified method for the formation of policy and determination of cases by the Commission and by the state courts." Id. at 319, 323 n.16, 333-34. The Court stressed the need for unitary enforcement of the regulatory scheme by noting the problem of drainage.[3] The Court also noted that "the physical facts are such that an additional permit may affect pressure on a well miles away. The standards applied by the Commission in a given case necessarily affect the entire state conservation system." Id. at 324.

In short, the Court in Burford recognized as a key justification for abstention the need for unified and comprehensive management of a far-flung state resource. We cannot say that this factor is present in the pending case. This case is not one where there is a need for unified management of a resource by a single agency or adjudicatory body.

The Begums also point out that they are only suing for money damages. In Quackenbush v. Allstate Insurance Co., 517 U.S. 706 (1996), the Court held that a federal court cannot dismiss or remand a case based on the Burford abstention doctrine where the plaintiff asserts a common law claim for damages: "Under our precedents, federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary. Because this was a damages action, we conclude that the District Court's remand order was an unwarranted

---

[3] The Court explained that "[s]ince the oil moves through the entire field, one operator can not only draw oil from under his own surface area, but can also, if he is advantageously located, drain oil from the most distant parts of the reservoir. The practice of attempting to drain oil from under the surface holdings of others leads to offset wells and other wasteful practices; and this problem is increased by the fact that the surface rights are split up into many small tracts." Id. at 319.

4

application of the <u>Burford</u> doctrine." <u>Id</u>. at 731. However, the Court indicated that a stay might be appropriate in actions at law for money damages, even though a remand or dismissal is not allowed. <u>Id</u>. at 720-21, 730-31. We have since stated that "staying a damages action is permissible" under <u>Quackenbush</u>. <u>Webb v. B.C. Rogers Poultry, Inc.</u>, 174 F.3d 697, 703 n.12 (5th Cir.), <u>cert. denied</u>, 120 S. Ct. 399 (1999). <u>See also id</u>. at 701 n.5 (explaining that, under <u>Quackenbush</u>, a federal court can "stay an action pending resolution in state court of an issue relevant to the federal case if the <u>Burford</u> doctrine called for abstention."). We therefore conclude that <u>Quackenbush</u> did not prohibit the district court from staying the pending action. But in light of our understanding of <u>Quackenbush</u>, we conclude that seeking only money damages is a factor weighing against abstention.

There are, however, factors presented which weigh in favor of abstention. First, the case presents questions of state law, questions which can further be characterized as important and novel. The Begums allege in their complaint that the Miners' conduct "constitutes fraud in violation of state law." State procedures employed by the Miners in adopting Ashraf[4] Begum are implicated. The issue of the timeliness of the suit (i.e., limitations or laches) under state law will also almost surely arise if the case proceeds. Texas choice of law and standing rules might also arise, since the Begums allege violations of Indian and Muslim law, and the Miners claim that Rafat Begum lacks standing. We are further satisfied that this attempt by the Begums to obtain a large money judgment, many years after the Miners brought Ashraf to the United States and adopted her through a facially valid state proceeding, presents novel and important issues of state law. The finality of adoptions and the circumstances under which adoptions can

---

[4] Also spelled "Ashra" in the record.

5

be challenged by a natural parent, particularly in light of the potential consequences of such a challenge to an innocent child, are obviously matters of great concern to every state.[5]

Of course, the presence of state law issues does not alone justify abstention; otherwise, a federal district court would be free to abstain in every diversity suit. We have however recognized, as factors weighing in favor of abstention, that the case arises under state law rather than federal law, that "the case requires inquiry into unsettled issues of state law," and the case involves important state interests. See Wilson v. Valley Elec. Membership Corp., 8 F.3d 311, 314 (5th Cir. 1993). While the Begums characterize their claims as involving constitutional due process questions, it is fair to say that any such federal questions are "entangled in a skein of state law that must be untangled before the federal case can proceed." Quackenbush, 517 U.S. at 727 (quoting McNeese v. Board of Ed. for Community Unit Sch. Dist. 187, 373 U.S. 668, 674 (1963)).

Second, this case most assuredly involves questions of domestic relations law. The Begums correctly argue that the domestic relations exception to diversity jurisdiction did not deprive the district court of subject matter jurisdiction. In Ankenbrandt v. Richards, 504 U.S. 689 (1992), the plaintiff sued her former husband and his female companion for alleged abuse of the children of the plaintiff and the defendant ex-husband. The Court held that the domestic relations exception to diversity jurisdiction "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree . . . ." Id. at 704 (emphasis added). By this narrow reading of the exception, the

---

[5] We do not mean to express any views on the underlying merits of this suit. The true circumstances of the adoption are not before us and cannot be discerned from this appellate record. We are troubled, however, by allegations in the federal complaint and the state court petition so at odds that we can only conclude that one side or the other has seriously misrepresented the facts in a court of law.

Court held that it did not apply.  The exception likewise does not apply to the pending case.  Plaintiffs are not seeking a custody decree, but are only seeking money damages.

However, the Court in Ankenbrandt recognized that even though the suit did not fall within the domestic relations exception, suits "involving elements of the domestic relationship" might be subject to Burford abstention when they present "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar."  Id. at 705-06 (quoting Colorado River, 424 U.S. at 814 (1976)).  The Court concluded that "[w]here, as here, the status of the domestic relationship has been determined as a matter of state law, and in any event has no bearing on the underlying torts alleged, we have no difficulty concluding that Burford abstention is inappropriate in this case."  Id. at 706.  In contrast, the status of the Miners' adoptive rights in the pending case bears directly on the tort claims alleged by the Begums.  The sum and substance of the Begums' claims is that the adoption was obtained through fraudulent means, giving rise to their alleged entitlement to money damages.  So far as we can tell, the Begums will have to establish that the termination of their parental rights and the adoption were invalid under state law to obtain the relief they seek.  Their own demand letter states that "we have also prepared a petition to set aside and annul the adoption of [Ashraf] based upon the grounds of fraud as documented herein."  This key issue of state family law, in our view, weighs in favor of abstention.[6]

---

[6] In somewhat similar cases involving family law issues, we have found abstention appropriate.  See Rogers v. Janzen, 891 F.2d 95 (5th Cir. 1989) (affirming district court decision to abstain in suit by plaintiff against former husband for abusing their daughter and denying plaintiff access to daughter, and recognizing, id. at 98, "the strong state interest in domestic relations matters," and "the competence of state courts in settling family disputes") (quoting Crouch v. Crouch, 566 F.2d 486, 487 (5th Cir. 1978)); DuBroff v. DuBroff, 833 F.2d 557 (5th Cir. 1987) (abstaining in appeal of dismissal of action alleging that plaintiff's ex-husband and others had deceived plaintiff in divorce settlement, and noting, id. at 561, that "there is perhaps no state administrative scheme in which federal court intrusions are less appropriate than domestic

Third, there is the earlier-filed state family court action. While the claims in the state suit and the pending federal suit are not identical, it is more than apparent that the Miners primarily seek, through the state court action, declaratory relief that will defeat the claim for monetary damages sought in the federal suit.[7] When the Begums attempted to remove the state court action to federal court, the Galveston federal court remanded the case to state court, with instructions that the parties "seek any further relief to which they feel themselves entitled in the courts of the State of Texas." The Begums disregarded this directive in bringing the pending original federal action in Houston federal court. The law is clear that the mere pendency of a state court action "is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." Colorado River, 424 U.S. at 817 (quoting McClennan v. Carland, 217 U.S. 268, 282 (1910)). Burford abstention, unlike Colorado River and Younger abstention, does not require a concurrent state court proceeding.[8] Nevertheless, in analyzing Burford abstention, the Supreme Court has emphasized the availability and adequacy of state court review as a factor justifying abstention. See New Orleans Public Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 361 (1989); see also Wilson, 8 F.3d at 314.

---

relations law."). However, these cases were decided before Ankenbrandt, where the Supreme Court defined the domestic relations exception narrowly and held that abstention was not appropriate. We therefore do not base our decision on these Fifth Circuit precedents, though we note that they are consistent with our holding.

[7] Specifically, in their state court petition the Miners seek a declaratory judgment that Abida Begum, "individually and as alleged widow of Mohammed Ikram, has no legal standing and is legally barred from contesting the validity of the decree of adoption of [Ashraf] by Petitioners," and that Rafat Begum (Ashraf's sister) "has no legal standing and is legally barred from claiming damages from Petitioners."

[8] See Murphy, 168 F.3d at 737-38 (explaining that Colorado River abstention applies "when there is a concurrent state proceeding" and other factors favor abstention); Sierra Club v. City of San Antonio, 112 F.3d 789, 798 (5th Cir. 1997) (explaining that abstention under Younger v. Harris, 401 U.S. 37 (1971), requires "the existence of an ongoing state proceeding with which the federal court action directly interferes.").

8

Summarizing, factors weighing against abstention are: (1) the general principle that federal courts should exercise the jurisdiction that Congress has conferred; (2) this case is not one where there is a need for unified management of a state resource by a single agency or adjudicatory body; and (3) plaintiffs seek only money damages. Factors weighing in favor of abstention are: (1) plaintiffs assert state law claims, the resolution of which appear to raise novel and important issues of state law; (2) this case concerns domestic relations; and (3) and there is a closely related stated court action. On balance, we cannot say that the district court abused its discretion in abstaining.

AFFIRMED.