**Revised May 24, 1999**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-50527

_____

JACK M. WEBB,
Special Deputy Receiver for
Employers National Insurance Company in Receivership,

Plaintiff-Appellee,

VERSUS

B.C. ROGERS POULTRY, INC.,
and
B.C. ROGERS PROCESSORS, INC.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

May 21, 1999

Before REAVLEY, POLITZ, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


B.C. Rogers Poultry, Inc., and B.C. Rogers Processors, Inc. (collectively, "B.C. Rogers"), appeal a remand to state court ordered pursuant to the *Burford* abstention doctrine. Concluding that the court acted without the doctrine's strictures as defined

by the Supreme Court, we reverse.

I.

The State of Texas brought Employers National Insurance Company ("ENIC"), an insurance company regulated under Texas law, into state court, where it was declared insolvent and placed in receivership. Pursuant to the Texas Insurance Code, the state obtained a permanent injunction and order, appointing Jack Webb as Special Deputy Receiver ("SDR") for ENIC and enjoining any person from interfering with the state receivership court proceedings or the lawful acts of the SDR and from taking any action involving the SDR outside of the state receivership court.

Webb, carrying out his duties as SDR, brought suit in state court against B.C. Rogers, as ENIC policyholders, to collect assetsSSunpaid workers' compensation premiumsSSallegedly belonging to ENIC. Webb asserts three alternative causes of action: (1) breach of contract, (2) *quantum meruit*, and (3) suit on sworn account. He seeks $674,335 in damages, plus interest and attorney's fees.

B.C. Rogers removed to federal court pursuant to 28 U.S.C. § 1441, alleging original jurisdiction based on diversity of citizenship. *See* 28 U.S.C. § 1332. Webb sought remand, advancing three grounds: (1) B.C. Rogers had failed to comply with the

2

removal statute, (2) the permanent injunction enjoined B.C. Rogers from litigating the dispute in a forum other than the receivership court, and (3) under the *Burford* abstention doctrine, the district court should refrain from exercising jurisdiction.[1]  The district court summarily rejected the first two bases but elected *Burford* abstention and remanded, holding that

> [a]bstention is appropriate in this case, for if this Court were to exercise federal jurisdiction, it could well interfere with the State of Texas' efforts to effect a coherent policy on a matter of public concern, that is, the collection of assets of an insolvent insurer through a state district court receivership proceeding wherein the state district court retains continuing jurisdiction over the liquidation proceedings.

## II.

We always must be certain that our limited jurisdiction encompasses the appeal before us.  *See Castaneda v. Falcon*, 166 F.3d 799, 801 (5th Cir. 1999); *Jones v. Collins*, 132 F.3d 1048, 1051 (5th Cir. 1998).  We *sua sponte* requested briefing on the issue and now clarify our jurisdiction.

The order abstaining under *Burford* and remanding is a final order disposing of all issues.  We have jurisdiction, therefore, pursuant to 28 U.S.C. § 1291.  *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 715 (1996); *Munich Am. Reinsurance Co. v. Crawford*, 141 F.3d 585, 589 (5th Cir. 1998), *cert. denied*,

---

[1] *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

3

119 S. Ct. 539 (1999).

In 28 U.S.C. § 1334(d), Congress has denied us jurisdiction over an appeal from a decision to abstain under § 1334(c) (allowing abstention, in the interest of comity or respect for state law, from state law causes of action arising under, or related to, title 11). Here, the receivership proceedings in state court arose under the Texas Insurance Code, not the Bankruptcy Code. *See Clark v. Fitzgibbons*, 105 F.3d 1049, 1051 (5th Cir. 1997) ("Insurance companies are ineligible for the protections afforded by the federal Bankruptcy Code. 11 U.S.C. § 109."). The district court, therefore, did not exercise jurisdiction over the removed action under 28 U.S.C. § 1452(a) (providing for removal of any action over which the court has jurisdiction under 28 U.S.C. § 1334) and 28 U.S.C. § 1334(b) (providing for original jurisdiction in the district courts "of all civil proceedings arising under title 11, or arising in or related to cases under title 11."). Rather, it based its jurisdiction on diversity of citizenship, found in 28 U.S.C. § 1332. The court's decision to abstain, then, did not fall within 28 U.S.C. § 1334(c), so § 1334(d) is inapposite.

Similarly, in 28 U.S.C. § 1447(d), Congress denied us jurisdiction over remands pursuant to 28 U.S.C. § 1447(c), which requires a district court to remand if it lacks subject matter jurisdiction or if the removal was defective; conversely, § 1447(d)

4

does not preclude review of remands on other grounds.[2] Neither party argues that the district court lacked subject matter jurisdiction. Rather, they dispute whether the court abused its discretion in abstaining from exercising its jurisdiction. Section 1447(d), therefore, is also inapposite, and we have jurisdiction to consider the appeal.

## III.

The *Burford* doctrine allows a federal court to abstain from exercising its jurisdiction in deference to complex state administrative procedures. The Supreme Court has described the *Burford* doctrine as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of New Orleans* ("*NOPSI*"), 491 U.S. 350, 361 (1989) (quoting *Colorado River Water Conservation*

---

[2] *See Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127 (1995); *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 345-52 (1976); *see also*, *e.g.*, *Angelides v. Baylor College of Med.*, 117 F.3d 833, 835-36 (5th Cir. 1997); *Soley v. First Nat'l Bank of Commerce*, 923 F.2d 406, 407-08 (5th Cir. 1991). Our inability to review a § 1447(c) remand obtains even if the order was erroneous. *See Thermtron*, 423 U.S. at 351; *Angelides*, 117 F.3d at 836.

*Dist. v. United States*, 424 U.S. 800, 814 (1976)).[3] Essentially, *Burford* instructs a district court to weigh the federal interests in retaining jurisdiction over the dispute against the state's interests in independent action to uniformly address a matter of state concern, and to abstain when the balance tips in favor of the latter. *See Quackenbush*, 517 U.S. at 728; *NOPSI*, 491 U.S. at 363; *Burford*, 319 U.S. at 334. But this "balance only rarely favors abstention." *Quackenbush*, 517 U.S. at 728. Typically, "federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 821 (quotation omitted).

In *Quackenbush*, the Court determined that an action seeking damages never warrants abstention. The Court examined the foundation and history of abstention doctrines, and *Burford* abstention in particular, finding that the power to abstain originated in "the discretion federal courts have traditionally exercised in deciding whether to provide equitable or discretionary relief." *Quackenbush*, 517 U.S. at 730. The Court disagreed with the Ninth Circuit's limitation of abstention to equitable cases, instead extending the doctrine "to all cases in which a federal court is asked to provide some form of discretionary relief." *Id*.[4]

---

[3] *See also Baran v. Port of Beaumont Navigation Dist.*, 57 F.3d 436, 441 (5th Cir. 1995).

[4] *See also Quackenbush*, 517 U.S. at 718 (recognizing that "the authority
(continued...)

6

A damages action, however, allows the court no discretion and may not be remanded.  *Id.* at 731.[5]

### A.

We review an abstention for abuse of discretion.  *See Clark*, 105 F.3d at 1051; *see also Burford*, 319 U.S. at 318 (describing court's choice of whether to abstain as a matter of discretion). The exercise of discretion must "fit[] within the narrow and specific limits prescribed by the particular abstention doctrine involved."  *Clark*, 105 F.3d at 1051 (quotation omitted).  A court necessarily abuses its discretion when it abstains outside of the doctrine's strictures.

### B.

B.C. Rogers presents a simple argument for reversal:  Under *Quackenbush*, a court may not remand pursuant to *Burford* abstention if the plaintiff seeks damages.  Webb seeks damages, so a *Burford* abstention remand is not permitted.

---

[4](...continued)
of a court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief.").

[5] *See id.* at 731 ("[F]ederal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary.  Because this was a damages action, we conclude that the District Court's remand was an unwarranted application of the *Burford* doctrine.").  Although remanding a damages case is inappropriate, the Court noted that a court could stay an action pending resolution in state court of an issue relevant to the federal case if the *Burford* doctrine called for abstention.  *Id*.

Webb counters with three ultimately unsuccessful arguments. First, he cites precedent no longer applicable after *Quackenbush* and argues to support an exercise of discretion where no discretion exists. He next incorrectly avers that the *Quackenbush* rule on which B.C. Rogers relies is not ironclad. He finally contends that, because one of his causes of action sounds in the equitable doctrine of *quantum meruit*, *Burford* abstention is appropriate within *Quackenbush*'s limitations.[6] We conclude that, because *Quackenbush* denies the legal authority to remand, the district court abused its discretion.

1.

Webb vigorously argues that the usual *Burford* considerations support remand. The McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, assigns primary responsibility for regulating the insurance industry to the states. Texas has enacted an extensive regulatory scheme for dealing with insolvent insurers and has an interest in applying its law to marshal efficiently all the assets of such insurers in a uniform manner. Webb contends that the federal government, on the other hand, has a "complete absence" of interest

---

[6] This argument relies on two premises: (1) A *quantum meruit* claim falls within the set of cases from which the Supreme Court has found a district court may abstain, and (2) a court may abstain and remand an entire case, including damages actions, so long as one cause of action falls within that set *Quackenbush* approved. Because we reject the first premise, we do not reach the second.

8

in this dispute.  The causes of action sound solely in state law;
no federal statutes or interests are involved.

Webb buttresses this argument by citing several of our
decisions in which we have affirmed abstention and have mentioned
the strong interests states have in addressing insolvent insurers.[7]
But these cases indicate only that we probably would find the
remand to be within the court's discretion if it had acted within
the bounds of the *Burford* doctrine.[8]  The analysis ignores
B.C. Rogers's argument that the district court had no discretion.

Relatedly, Webb overlooks that these cited cases precede
*Quackenbush* and the limits it imposed on abstention.[9]  As we
explained in *Munich American*, we previously had approved abstention

---

[7] *See*, *e.g.*, *Barnhardt Marine Ins., Inc. v. New England Int'l Sur. of Am., Inc.*, 961 F.2d 529, 531-32 n.4 (5th Cir. 1992) (affirming remand and noting near unanimity among the circuit courts that *Burford* abstention is appropriate in cases related to a state's administration of an insolvent insurer); *Martin Ins. Agency, Inc. v. Prudential Reinsurance Co.*, 910 F.2d 249 (5th Cir. 1990).

[8] This is true even though Webb overstates his case in declaring the "complete absence" of federal interest.  The district court assumed removal jurisdiction based on diversity pursuant to 28 U.S.C. § 1332.  The Constitution, in Art. III, § 2, allows for federal court jurisdiction in cases and controversies "between Citizens of different States."  When Congress first created lower federal courts in the Judiciary Act of 1789, Act of Sept. 24, 1789, 1 Stat. 73, it included diversity jurisdiction as one basis for original federal court jurisdictionSSa basis that has survived since.  The presupposition for diversity jurisdiction is to provide diverse parties with a federal forum in which an out-of-state party might escape local bias.  *See*, *e.g.*, *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 546 n.6 (1995) (noting this purpose).  By this grant of jurisdiction, Congress has expressed a federal interest in administering impartial justice to diverse parties.

[9] Webb cites one case, *Clark*, in which we affirmed an abstention remand in an insurance case post-*Quackenbush*.  *See Clark*, 105 F.3d at 1052.  *Clark* does not control our outcome, because we did not confront the issue we face here.  We did not discuss whether the damages sought precluded remand under *Quackenbush* and, indeed, we did not cite *Quackenbush*.

9

remands in cases related to insolvent insurers involved in state proceedings; but this changed with *Quackenbush*'s prohibition on remanding damages action. *See Munich American*, 141 F.3d at 589. Now a court may abstain "only when the district court has discretion to grant or deny relief." *Id*. Accordingly, we found that the court abused its discretion by invoking *Burford,* because it had no discretion in the relief sought. *Id*. at 590.[10]

Webb's argument and the cited precedent would provide a sound basis for affirming the district court's application of the *Burford* doctrine if it were within its discretion. Because, however, we find that the nature of Webb's claims precludes *Burford* abstention, we do not reach whether the *Burford* doctrine otherwise favors abstention on these facts.

2.

Webb's contention that *Quackenbush* does not impose an ironclad, *per se* bar to remanding damages action lacks merit. Webb quotes a passage[11] from a section in which the Court explained the

---

[10] Webb attempts to distinguish *Munich American* by comparing the alleged lack of federal interest here to the federal interest in the Federal Arbitration Act ("FAA") on which the *Munich American* plaintiffs relied. But our discussion of the FAA focused on the lack of discretion in the relief sought, which bars a remand; we did not reference, even in passing, a federal interest.

[11] "Ultimately, what is at stake is a federal court's decision, based on a careful consideration of the federal interests in retaining jurisdiction over

(continued...)

roots and purpose of abstention. *See Quackenbush*, 517 U.S. at 727-28. It also noted that prior caselaw does "not provide a formulaic test for determining when dismissal [or remand] under *Burford* is appropriate." *Id*. at 727. But the Court had not even begun its application of these general principles to the case before it. When it did reach its holding, it left no exceptions: abstention is appropriate "*only* where the relief being sought is equitable or otherwise discretionary." *Id*. at 731 (emphasis added).[12]

3.

Webb makes the superficially appealing argument that the "equitable nature" of *quantum meruit* brings the case within *Quackenbush* and allows for remand. "*Quantum meruit* is an equitable doctrine based on the principle that one who benefits from another's labor and materials should not be unjustly enriched

---

[11](...continued)
the dispute and the competing concern for the 'independence of state action,' that the State's interests are paramount and that a dispute would best be adjudicated in a state forum." *Quackenbush*, 517 U.S. at 728 (internal citation omitted).

[12] *See also id.* at 730 (noting that staying a damages action is permissible, "but we have not permitted [courts] to dismiss the action altogether"). Webb also resourcefully quotes a decision interpreting *Quackenbush* to mean "that abstention, under *Burford* or otherwise, may be appropriate in suits for damages." *See DeMauro v. DeMauro*, 115 F.3d 94, 98 (1st Cir. 1997). Although true, this lends no support to Webb's position. The court further explained that a "district court may only order a stay pending resolution of state proceedings; it cannot invoke abstention to dismiss the suit altogether." *Id*. Here, the court did not stay the action; it remanded, the functional equivalent of dismissal in this context.

11

thereby."   *SMP Sales Management, Inc. v. Fleet Credit Corp.*, 960 F.2d 557, 560 n.3 (5th Cir. 1992).   Texas courts also have noted the equitable nature of *quantum meruit*.[13]   Because the case includes this claim for equitable relief, the argument goes, it falls within *Quackenbush* and may be remanded.

a.

Webb reads *Quackenbush* too simply and fails to comprehend the complexity of *quantum meruit*.   For *Burford* to apply, a federal court must be sitting in equity with the discretion to deny relief. *See Quackenbush*, 517 U.S. at 728 (explaining that the power to abstain "derives from the discretion historically exercised by courts of equity.").   As part of the Court's formulation of when abstention doctrines apply, the court must be sitting in equity.[14]

---

[13] *See*, *e.g.*, *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) ("Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received."); *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) ("Quantum meruit is an equitable remedy which does not arise out of a contract, but is independent of it."); *see also*, *e.g.*, *Brankline v. Capuano*, 656 So. 2d 1, 5 (La. App. 3d Cir. 1995) ("Quantum meruit is an equitable remedy founded upon the principle that no one who benefits from the labor or materials of another should be unjustly enriched at the other's expense."); *McGee v. McGee*, 648 A.2d 1128, 1133 (N.J. Super. Ct. App. Div. 1994) (describing "equitable remedies such as . . . quantum meruit," "invocable for equitable reasons"); *Feingold v. Pucello*, 654 A.2d 1093, 1094 (Pa. Super. Ct. 1995) ("Quantum meruit is an equitable remedy."); *Castelli v. Lien*, 910 S.W.2d 420, 428 (Tenn. Ct. App. 1995) ("quantum meruit is an equitable remedy" available if the contract is no longer enforceable); *Po River Water & Sewer Co. v. Indian Acres Club, Inc.*, 495 S.E.2d 478, 482 (Va. 1998) (describing relief under quantum meruit theory as equitable); *Bowles v. Sunrise Home Ctr., Inc.*, 847 P.2d 1002, 1004 (Wyo. 1993) ("Unjust enrichment (or quantum meruit) is an equitable remedy which implies a contract").

[14] *See Quackenbush*, 517 U.S. at 728; *id*. at 717 ("[I]t has long been established that a federal court has the authority to decline to exercise (continued...)

12

In *Quackenbush*, the Court emphasized a court of equity's discretion to grant or deny relief, holding that abstention based remands or dismissals are appropriate "only where the relief being sought is equitable or otherwise discretionary." *Quackenbush*, 517 U.S. at 731.[15] The source of the power to abstain confirms the centrality of the court's sitting in equity and hence possessing discretion in the relief afforded. *See Quackenbush*, 517 U.S. at 728. That discretion allows it to deny relief; the abstention doctrines merely add that "the exercise of this discretion must reflect principles of federalism and comity." *Id*. When a court considers these factors, balancing state and federal interests, discretion may favor withholding relief by way of abstention-based

---

[14](...continued)
jurisdiction when it 'is asked to employ its historic powers as a court of equity.'") (quoting *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 120 (1981) (Brennan, J., concurring)); *NOPSI*, 491 U.S. at 361 (explaining that in certain circumstances "a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies"); *see also Tribune Co. v. Abiola*, 66 F.3d 12, 16 (2d Cir. 1995) ("We find it significant that the Supreme Court [in *NOPSI*] traced the origin of abstention doctrines to the federal court's discretion to withhold equitable relief, and reformulated the *Burford* doctrine to require federal courts 'sitting in equity' to abstain from exercising their jurisdiction in certain circumstances." (citation omitted)); *id*. at 15-16 ("When a federal court sits in equity[,]" abstention may be warranted).

[15] The use of "or otherwise" rather than simply "or discretionary" in "equitable or otherwise discretionary" implies that the Court assumed that the equitable relief to which it referred also was discretionary. *See also Quackenbush*, 517 U.S. at 730 (holding abstention extends "to all cases in which a federal court is asked to provide some form of discretionary relief"); *Munich Am.*, 141 F.3d at 589 ("*Burford* abstention is permissible only when the district court has discretion to grant or deny relief.").

13

remand or dismissal.[16]

>This withholding of extraordinary relief by courts having authority to give it is not a denial of the jurisdiction which Congress has conferred on the federal courts . . . . On the contrary, it is but a recognition . . . that a federal court of equity . . . should stay its hand in the public interest when it reasonably appears that private interests will not suffer . . . . It is in the public interest that federal courts of equity should exercise their discretionary power to grant or withhold relief so as to avoid needless obstruction of the domestic policy of the states.

*Alabama Pub. Serv. Comm'n v. Southern R.R.*, 341 U.S. 341, 350-51 (1951).

b.

When a court hears a claim for *quantum meruit*, it neither sits in equity nor possesses discretion. Courts frequently refer to *quantum meruit* as an equitable doctrine and even as seeking equitable relief. Despite its equitable nature, however, *quantum meruit* is an action at lawSSa legal cause of action seeking money damages. Indeed, courts recognize that they do not sit in equity

---

[16] The higher degree of interference with state proceedings that injunctive or declaratory relief imposes, as opposed to a damages award, also favors allowing abstention when a court sits in equity, but not in an action at law. *See Quackenbush*, 517 U.S. at 717-18 ("The history of equity jurisdiction is the history of regard for public consequences in employing the extraordinary remedy of the injunction . . . . Few public interest have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies [by means of abstention] . . . ."); *Tribune Co.*, 66 F.3d at 16 (holding that abstention is available only when the court sits in equity, because "[i]njunctions are the most intrusive sort of judicial relief, and may directly interfere with the proceedings or orders of state administrative agencies." (quotation omitted)).

when they hear a *quantum meruit* claim,[17] and they recognize that a division between equity and law places *quantum meruit* on the law side.[18]

---

[17] *See American Nat'l Ins. Co. v. Warnock*, 114 S.W.2d 1161, 1165 (Tex. 1938) (holding that, although "courts of equity will not enforce" the statute of frauds if doing so would work a fraud, specific performance will not be granted for land contract barred by statute of frauds, "since the value of the consideration may be recovered in an action at law on a quantum meruit."); *Upson v. Fitzgerald*, 103 S.W.2d 147, 150 (Tex. 1937) (same); *Richardson v. Iley*, 299 S.W.2d 187, 188 (Tex. App.§San Antonio 1957, writ ref'd n.r.e.) (same); *see also*, *e.g.*, *Tompkins v. Hoge*, 250 P.2d 174, 178 (Cal. Ct. App. 1952) (denying equitable relief of specific performance because, the services being compensable "in quantum meruit, the remedy at law is adequate"); *Frontier Properties Corp. v. Swanberg*, 488 N.W.2d 146, 147 (Iowa 1992) ("[A]ctions for amounts due under a contract or for quantum meruit recovery based on implied contract are actions at law."); *Campbell v. Welsh*, 460 A.2d 76, 82 (Md. Ct. Spec. App. 1983) (referencing cases that permit "recovery at law, on a quantum meruit basis"); *Van Horn v. DeMarest*, 77 A. 354, 367-68 (N.J. 1910) (referring to "an action at law upon a quantum meruit"); *Ogletree, Deakins, Nash, Smoak & Stewart P.C. v. Albany Steel Inc.*, 663 N.Y.S.2d 313, 315 (App. Div. 1997) (rejecting categorization of claim as equitable because a "quantum meruit action is essentially an action at law, inasmuch as it seeks money damages in the nature of a breach of contract, notwithstanding that the rationale underlying such causes of action is fairness and equitable principles in a general rather than legal sense.") (quotation omitted); *Cordrey v. Cordrey*, 579 P.2d 209, 213 (Okla. Ct. App. 1978) (describing quantum meruit action as "one at law and not equity"); *Welch v. Webb*, 615 P.2d 391, 393 n.3 (Or. Ct. App. 1980) ("This case, brought as a suit in equity, has become an action at law for quantum meruit."); *Tri-State Home Improvement Co. v. Mansavage*, 253 N.W.2d 474, 479 (Wis. 1977) ("A cause of action for quantum meruit, while equitable in nature, is an action at law" usually heard by jury, and not by court sitting in equity).

[18] *See*, *e.g.*, *Allen v. Peachtree Airport Park Joint Venture*, 499 S.E.2d 690, 691 (Ga. Ct. App. 1998) (rejecting argument that district court lacked jurisdiction "to determine equitable issues such as quantum meruit" because "state courts have subject matter jurisdiction of quantum meruit claims, which are considered actions at law"); *Ordon v. Johnson*, 77 N.W.2d 377, 383 (Mich. 1956) (affirming transfer of cause by chancery judge to law side to allow hearing on quantum meruit claim); *Craig v. Jo B. Gardner, Inc.*, 586 S.W.2d 316, 325 (Mo. 1979) (holding court of equity could hear *quantum meruit* claim, "a suit at law," but only because equity court already had "rightful possession" of case because of equitable claim); *Galloway v. Eichells*, 62 A.2d 499, 502 (N.J. Super. Ct. Ch. Div. 1948) (transferring action to Law Division because only possible relief would be damages "at law upon quantum meruit"); *Turcott v. Gilbane Bldg. Co.*, 179 A.2d 491, 493 (R.I. 1962) (holding that *quantum meruit* action, "a remedy at law," must be brought "in an action at law" and not in a court of equity); *Lanmor Corp. v. B M & K Builders, Inc.*, 1990 Va. Cir. LEXIS 443, at *7 (Va. Cir. Ct. Sept. 10, 1990) (denying leave to amend bill of equity to add *quantum meruit*, which "involves legal principles cognizable at law, not in equity," because

(continued...)

Furthermore, in a *quantum meruit* action, the court lacks discretion to balance interests between the state and federal governments. Relief turns not on a weighing of the equities but on a straightforward application of law to facts. If the facts justify relief under the legal standardSSa question often answered by jurySSthe court has no discretion to weigh the equities and decide against relief.[19]

Sitting at law, without discretion to deny relief, a court cannot remand a *quantum meruit* claim under *Quackenbush*. The state's interests must yield to the federal court's "strict duty to exercise the jurisdiction that is conferred upon [it] by Congress." *Quackenbush*, 517 U.S. at 716. Because the district court lacked discretion to remand these damages actions, we REVERSE and REMAND for further proceedings consistent with this opinion.

---

[18](...continued) sustaining demurrer on equitable claims left no basis for equitable jurisdiction).

[19] *Cf. Knebel v. Capital Nat'l Bank*, 505 S.W.2d 628, 631 (Tex. App.SSAustin) (describing the "equitable concept" of unjust enrichment, "enforced through the common law courts as Quantum meruit," which "*obligated* the common law courts" to enforce certain implied promises) (emphasis added), *aff'd in part and rev'd in part on other grounds*, 518 S.W.2d 74 (Tex. 1974).

POLITZ, Circuit Judge, dissenting:

My colleagues in the majority have issued a forceful opinion from which I respectfully must dissent.

My colleagues conclude that the district court abused its discretion by abstaining under **Burford**[20] because the nature of Webb's claims precludes abstention. According to the **Burford** abstention doctrine, a federal court may abstain and remand a case to state court "only where the relief being sought is equitable or otherwise discretionary."[21] After determining that Webb's claim for *quantum meruit* is an action at law – a determination that in part spurs my dissent – the majority concludes that the district court was not sitting in equity and did not possess discretion to grant or deny relief. Thus, they opine, the district court acted outside the strictures of the doctrine by abstaining. I dissent, concluding that *quantum meruit* more appropriately should be considered an equitable action, and fully convinced that the district court's abstention order should be affirmed.

I.

The nature of *quantum meruit* is, indeed, "complex[]."[22]  The

---

[20] **Burford v. Sun Oil Co.**, 319 U.S. 315 (1943).

[21] **Quackenbush v. Allstate Ins. Co.**, 517 U.S. 706, 731 (1996).

[22] *Supra*, at ____ [majority draft, p. 12].  *Cf.* 5 ALAN LINTON CORBIN, CORBIN ON CONTRACTS § 1103, at 557 (1964) ("The remedy of
(continued...)

majority describes *quantum meruit* as an action at law – a legal cause of action seeking money damages – and cites numerous cases in support thereof. There is contrary jurisprudence describing *quantum meruit* as an equitable action.[23] "The battle of the string citations [, however,] can have no winner."[24] Thus, reflection on the Supreme Court's discussion in **Quackenbush v. Allstate Insurance Company**[25] is appropriate.

Congress imposed upon the federal courts a duty to exercise their jurisdiction, but the statutes conferring jurisdiction were enacted against a background of traditional principles that

---

[22](...continued)
restitution [, a broad remedy within which *quantum meruit* has been classified,] cannot properly be described as either 'legal' or 'equitable' in any narrowly restricted signification of those terms. It was once a remedy that was created and applied by both the Judges and the Chancellors . . . .").

[23] *See supra*, at _____ n.13 [majority draft, p. 11]; **FDIC v. Plato**, 981 F.2d 852, 858 n.14 (5th Cir. 1993) (treating *quantum meruit* damages as equitable relief)*; see also* **United States Gypsum Co. v. National Gypsum Co.**, 352 U.S. 457, 478 (1957) (Black, J., dissenting) (hinting that *quantum meruit* is an action in equity by stating that recovery under that theory runs counter to the equitable doctrine of "unclean hands"). *But see* **Mertens v. Hewitt Assocs.**, 508 U.S. 248, 255 (1993) ("Money damages are, of course, the classic form of *legal* relief."); *cf.* **Reich v. Continental Cas. Co.**, 33 F.3d 754, 756 (7th Cir. 1994) (dictum) (In seeking restitution,"[plaintiff] was seeking not a profit, but merely a receipt, an insurance premium, net of some expenses; to call this a 'profit,' it could be argued, would convert every suit for the price of a contract into a suit for restitution, contrary to the law.").

[24] **Smith v. Wade**, 461 U.S. 30, 93 (1983) (O'Connor, J., dissenting).

[25] 517 U.S. 706 (1996).

18

included a court's ability to abstain in certain circumstances.[26] Thus, "it has long been established that a federal court has the authority to decline to exercise its jurisdiction when it is asked to employ its historic powers as a court of equity."[27]  And more specifically, "the power to dismiss under the **Burford** doctrine . . . derives from the discretion historically enjoyed by courts of equity."[28]  Thus, the appropriate issue to be resolved is whether courts of equity historically heard claims of *quantum meruit*.

Given the Supreme Court's historical emphasis, it is my perception that the focus should be upon the origin of the relief and its position at the time the federal judicial system was created, not how the cause of action has since evolved.[29]  The roots of *quantum meruit* are in the courts of equity;[30] claims for *quantum meruit* appeared in those courts before the cause of action could be pursued at law.  Claims for *quantum meruit* were pursued in the

---

[26] **Id.**, at 716-17.

[27] **Id.**, at 717 (internal quotations omitted).

[28] **Id.**, at 727-28.

[29] It appears that courts competed for jurisdiction, *see* JOHN P. DAWSON ET AL., CASES AND COMMENT ON CONTRACTS 107 (6th ed. 1993) ("Since judges derived their income from litigants' fees, it is not surprising that competition for judicial business developed . . . ."), so emphasis on the evolution of the cause of action does not seem appropriate.

[30] JAMES BARR AMES, LECTURES ON LEGAL HISTORY 156 (1913).

courts of equity at the birth of our judicial system.[31]   Thus, despite some indications, historically speaking, that *quantum meruit* was a legal cause of action,[32] I am not prepared to dispositively rule that *quantum meruit* is a legal cause of action.

## II.

Having personally concluded that a federal court sits in equity when hearing a claim for *quantum meruit*,[33] I continue with the **Burford** analysis.   The Supreme Court describes the **Burford** abstention doctrine as follows:

---

[31] Morton J. Horwitz, *The Historical Foundations of Modern Contract Law*, 87 Harv. L. Rev. 917, 934 (1974) ("As late as the turn of the century, it was also the prevailing practice in America to sue in *indebitatus assumptsit* for an express contract and for counts in both *indebitatus* and *quantum meruit* to be 'usually joined in the declaration; so that on failure of proof of an express debt or price, the Plf. may resort *ad debitum equitatis*,' that is, to an equitable action in *quantum meruit*.") (footnote omitted, italics added) (quoting AMERICAN PRECEDENTS OF DECLARATIONS 95 (B. Perham ed. 1802).

[32] *See* J.L. Barton, *Contract and* Quantum Meruit*: The Antecedents of* Cutter v. Powell, 8 J. Legal Hist. 48 (1987); Horwitz, *supra* note 12, at 936 (discussing the *jury*'s power to set a reasonable price in *quantum meruit*); *see also* RESTATEMENT OF RESTITUTION: QUASI CONTRACTS AND CONSTRUCTIVE TRUSTS § 4 cmt. e, at 21 (1937) ("Although ordinarily such money judgment is obtained by an action at law, a decree for money will sometimes be rendered by a court of equity.").

[33] Besides *quantum meruit*, Webb also pursued causes of action for breach of contract and for suit on sworn account, but these *legal* claims do not undermine the conclusion that the district court was sitting in equity. **Quackenbush**, 517 U.S. at 730 ("We have not strictly limited abstention to equitable cases, . . . but rather have extended the doctrine to all cases in which a federal court is asked to provide some form of discretionary relief.") (internal quotations and citations omitted).

20

> Where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.[34]

The district court abstained under the second noted circumstance,[35] and, in doing so, in my opinion, it did not abuse its discretion.

Prior to **Quackenbush**, this court and other courts consistently had approved **Burford** abstention in actions involving an insurance company that, in turn, was involved in ongoing state delinquency proceedings.[36] Being persuaded that the holding of **Quackenbush** does not torpedo the district court's decision to abstain, I

---

[34] **New Orleans Pub. Serv., Inc. v. Council of New Orleans**, 491 U.S. 350, 361 (1989) (internal quotations and citations omitted).

[35] **Webb v. B.C. Rogers Poultry, Inc.**, No. A-98-CA-005-SS (W.D. Tex. Feb. 19, 1998) ("Abstention is appropriate in this case, for if this Court were to exercise federal jurisdiction, it could well interfere with the State of Texas' efforts to effect a coherent policy on a matter of public concern, that is, the collection of assets of an insolvent insurer through a state district court receivership proceeding wherein the state district court retains continuing jurisdiction over the liquidation proceedings. Failure to abstain could lead to removal of cases to federal court and possible changes of venue, leaving the receiver facing litigation in several forums and under different circumstances. This would be detrimental to the overall scheme of the liquidation proceedings in Texas when an insurance company becomes insolvent.").

[36] **Munich Am. Reins. Co. v. Crawford**, 141 F.3d 585, 589 n.2 (5th Cir.) (collecting cases), *cert. denied*, 119 S. Ct. 539 (1998).

briefly reflect only on the remaining analysis because of the solid background of precedent upholding **Burford** abstention in similar situations.

A.

Texas' regulation of the insurance industry is "a matter of substantial public concern."  Congress manifestly considers such regulation a matter of public concern.[37]  Precedent teaches that this concern is substantial.[38]

B.

Texas has established a coherent policy regulating the insurance industry.  It has formulated a complex and comprehensive scheme involving numerous actors, including the Department of Insurance, the Commissioner of Insurance, as well as the District Court of Travis County.  Under Texas law, the governor, with the advice and consent of the senate, appoints a Commissioner of Insurance who is charged with the primary responsibility of administering, enforcing, and executing provisions of the Insurance

---

[37] 15 U.S.C. §1011 ("Congress hereby declares that the continued regulation . . . by the several States of the business of insurance is in the public interest . . . .").

[38] *See* **Martin Ins. Agency, Inc. v. Prudential Reins. Co.**, 910 F.2d 249, 255 (5th Cir. 1990) (necessarily finding the concern "substantial" because it was "appropriate to abstain on **Burford** abstention grounds"); *see also* **Lac D'Amiante du Quebec, Ltee v. American Home Assurance Co.**, 864 F.2d 1033, 1045 (3d Cir. 1988) ("essential state concern").

Code.[39]   Decisions by the Commissioner may be challenged by interested parties in the District Court of Travis County, "and not elsewhere."[40]   The Attorney General for the State of Texas is charged with representing and advising the Commissioner in all legal matters.[41]

Texas' comprehensive scheme also quite appropriately covers matters concerning those insurance companies that become insolvent.[42] Particular financial considerations must be met before an insurance company may be incorporated in Texas,[43] and the Department of Insurance is charged with monitoring the continuing performance of insurance companies.[44] If the department determines that an insurance company's financial position has dipped below a prescribed level, the Commissioner must notify the company of this determination and provide the company with a list of requirements,

---

[39] TEX. INS. CODE ANN. Art. 1.09(a), (b).

[40] TEX. INS. CODE ANN. Art. 1.04(a).

[41] TEX. INS. CODE ANN. Art. 1.09-1(a).

[42] *See generally* TEX. INS. CODE ANN. Arts. 21.28, 21.28-A; **El Paso Elec. Co. v. Texas Dep't of Ins.**, 937 S.W.2d 432, 434-35 (Tex. 1996) ("Article 21.28 of the Texas Insurance Code sets forth a comprehensive scheme for the liquidation, rehabilitation, and reorganization of insolvent insurers."); *see also* TEX. INS. CODE ANN. Art. 21.28 § 16 ("In the event of conflict between the provisions of this Article and the provisions of any existing law, the provisions of this Article shall prevail, and all laws, or parts of law, in conflict with the provisions of this Article, are hereby repealed to the extent of such conflict.").

[43] TEX. INS. CODE ANN. Art. 2.02.

[44] TEX. INS. CODE ANN. Art. 1.10.

compliance with which will absolve the earlier departmental determination.[45] If, after a specified period of time, the company has not met the requirements set forth by the Commissioner and other criteria have not been met, the Commissioner must notify the Attorney General who may apply to any Travis County court for remedial action, including the appointment of a receiver.[46] Texas law charges an appointed receiver with the duty of *conducting* the business of the delinquent insurer and *conserving* the assets and *protecting* the rights of policyholders and claimants.[47] Additionally, Texas law specifies where the proceeds collected by the receiver shall be held.[48] Finally, Texas law specifies that the exclusive venue for delinquency proceedings shall be in Travis County.[49] It is abundantly clear that Texas indeed has established a coherent policy in this area.

---

[45] TEX. INS. CODE ANN. Art. 21.28-A.

[46] TEX. INS. CODE ANN. Art. 21.28-A.

[47] TEX. INS. CODE ANN. Art. 21.28 § 2(e).

[48] TEX. INS. CODE ANN. Art. 21.28 § 2(h) ("Except as provided by this subsection, all money collected by the receiver shall be forthwith deposited into the Texas Treasury Safekeeping Trust Company . . . .").

[49] TEX. INS. CODE ANN. Art. 21.28 § 2(i) ("Exclusive venue of delinquency proceedings shall be in Travis County, Texas.").

C.

I find no basis for suggesting that the district court abused its discretion in concluding that federal review of the questions presented in this case and similar cases would be disruptive of Texas' efforts to effectuate its coherent policy. Congress delegated the regulation of the business of insurance to the states,[50] and Texas has created a complex and comprehensive scheme to do exactly that. The Texas legislature has concentrated judicial review of insurance proceedings in Travis County, and consequently those courts, like the Department of Insurance and the Commissioner of Insurance, have developed a specialized knowledge regarding these proceedings.[51] In my view, reversing the district court and allowing this case to continue in federal court inappropriately "usurp[s]" Texas' control

---

[50] 15 U.S.C. § 1012(a) ("The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business."). *But see* 15 U.S.C. § 1012(b) ("No Act of Congress shall be construed to invalidate, impair, or supercede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance . . . .").

[51] *See* **Burford**, 319 U.S. at 325-27.

over the liquidation proceeding.[52]

Finally, Texas requires the receiver to "take such steps as may be necessary to *conserve* the assets . . . for the purpose of liquidating . . . the affairs of the insurer."[53]  By holding that the federal district court possessed jurisdiction over this case, the majority potentially sacrifices one of the chief purposes of the Texas regulatory scheme by effectively requiring the "dissipation of the insolvent company's funds"[54] likely to result from litigation conducted outside Travis County and away from the court with the responsibility for this insurance company salvage operation.

Splintering a portion of this on-going proceeding and insisting on jurisdiction herein for the federal district court unduly threatens the scheme enacted by Texas as specifically authorized by Congress.  As our courts have

---

[52] **Barnhardt Marine Ins., Inc. v. New England Int'l Surety of Am., Inc.**, 961 F.2d 529, 532 (5th Cir. 1992).

[53] TEX. INS. CODE ANN. Art. 21.28 § 2(e) (emphasis added).

[54] **Munich Am. Reins. Co.**, 141 F.3d at 593 ("[C]onsolidation prevents the unnecessary and wasteful dissipation of the insolvent company's funds that would occur if the receiver had to defend unconnected suits in different forums across the country.").

so forcefully noted: "'in instances, where states have . . . formulat[ed] complex and specialized administrative and judicial schemes to regulate insurers, especially the liquidation of insolvent insurers,' the federal court should abstain from exercising jurisdiction in disputes occurring in the larger context of state liquidation proceedings."[55]   I am in absolute agreement with this statement.

## III.

In sum, we should conclude that *quantum meruit* historically was, and therefore should be deemed to be, an equitable action and that the district court did not abuse its discretion in abstaining under **Burford.**   I

---

[55] **Martin Ins. Agency, Inc.**, 910 F.2d at 254 (quoting **Grimes v. Crown Life Ins. Co.**, 857 F.2d 699, 703 (10th Cir. 1988)); *cf.* **Sierra Club v. City of San Antonio**, 112 F.3d 789, 796 (5th Cir. 1997) ("**Burford** abstention is particularly appropriate where by proceeding the district court would have risked reaching a different answer than the state institutions with greater interest in and familiarity with such matters.") (internal quotations and citations omitted).   True, the district court noted that "the case at bar may be a simple determination of what, if any, premium is owed by the defendants to the receiver acting through his appointed authority." **Webb v. B.C. Rogers Poultry, Inc.**, No. A-98-CA-005-SS (W.D. Tex. Feb. 19, 1998).   Our precedent, nonetheless, reveals that "disruption" may stem either from unsettled law or from the application of settled law to complex, local facts. **Wilson v. Valley Elec. Membership Corp.**, 8 F.3d 311, 314-15 (5th Cir. 1993). And on the record before this court, I cannot conclude that the district court abused its discretion in abstaining.

27

would affirm the judgment appealed.